IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 14, 2009

## STATE OF TENNESSEE v. DERRICK FUTCH

**Direct Appeal from the Criminal Court for Shelby County**
**No. 07-04920, 910, 952     W. Otis Higgs, Jr., Judge**

---

**No. W2008-01046-CCA-R3-CD  - Filed August 20, 2009**

---

The defendant, Derrick Futch, was convicted of two counts of obtaining a controlled substance by forgery, Class D felonies, and one count of attempt to obtain a controlled substance by forgery, a Class E felony.  The defendant was sentenced to three years for each conviction of obtaining a controlled substance by forgery and two years for his conviction of attempt to obtain a controlled substance by forgery.  On appeal, the defendant raises the following issues: (1) whether the trial court erred in consolidating the three offenses for trial; (2) whether the trial court erred in allowing the state to impeach the defendant's testimony with evidence of a prior conviction; (3) whether the evidence was sufficient to support the convictions; and (4) whether the cumulative effect of the trial court's errors violated due process and the defendant's right to a fair jury trial.  Upon review of the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

J.C. McLin, J., delivered the opinion of the court, in which John Everett Williams and Alan E. Glenn, JJ., joined.

Robert Wilson Jones (at trial), Chief Public Defender; Phyllis Aluko (on appeal), Assistant Public Defender and Michael Johnson (at trial), Assistant Public Defender, Memphis, Tennessee, for the appellant, Derrick Futch.

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew Bryant Haskell, Assistant Attorney General; William L. Gibbons, District Attorney General; and Marianne Bell, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

#### I. Background

The defendant was indicted in two separate cases for obtaining a controlled substance by forgery and in another case for attempt to obtain a controlled substance by forgery.  The state moved to consolidate the three cases for trial and defense counsel objected.  The trial court consolidated the three cases  and a trial commenced.  The following pertinent testimony was presented at trial.  Joshua

Richard Groves, a board certified general surgeon, testified that in July of 2006, he began a fellowship at the burn and wound care center (hereinafter "the wound care center") at The Regional Medical Center in Memphis (hereinafter "The Med"). Dr. Groves stated that he treated the defendant at the wound care center on several occasions for lower extremity venous stasis ulcers, wounds related to circulatory problems and swelling. On August 3, 2006, the defendant complained of pain and Dr. Groves wrote a prescription for fifteen Percocet tablets. Dr. Groves explained that Percocet was another name for Oxycodone, a Schedule II controlled substance with addictive qualities. According to Dr. Groves, Percocet caused drowsiness and therefore should only be taken at bedtime. Furthermore, if a patient with venous stasis ulcers failed to move around during the day, the condition could become worse.

Dr. Groves explained the procedure followed in prescribing the defendant Percocet. He said that the prescription pad was locked in a mechanized cabinet. Dr. Groves entered his security code, pulled out a prescription sheet, wrote the prescription, and handed the prescription to a nurse. The nurse would stamp the prescription with the defendant's information, write the prescription information in the defendant's medical chart, and give the prescription to the defendant. Dr. Groves did not allow nurses or other personnel to change his prescription orders. He identified the prescription that he wrote for the defendant on August 3, 2006, and it was made a trial exhibit. Dr. Groves testified that the prescription had been signed by him and contained his instructions: "One to two tablets, by mouth, at night, as needed for pain." The prescription allowed for no refills and the dose was five milligrams. Dr. Groves testified that the prescription indicated an order for forty-five Percocet tablets, however, he wrote the prescription for fifteen Percocet tablets. He stated that he had never written a prescription for forty-five Percocet tablets because the quantity was too great considering the medication's risks of addiction and overdose.

Dr. Groves also identified a prescription dated August 17, 2006, which was made a trial exhibit. He stated that on August 17th, he treated the defendant and gave him a prescription for eight Percocet tablets. The same procedure that Dr. Groves followed on August 3rd was followed in writing the prescription on August 17th. Upon reviewing the prescription, Dr. Groves confirmed that he did not allow the prescription to be altered, but said that the quantity had been changed from eight, the quantity that he ordered, to forty-eight. Dr. Groves stated that he had never written a prescription for forty-eight Percocet tablets.

On August 24, 2006, the defendant returned to the wound care center. Dr. Groves stated he treated the defendant and wrote a prescription for fifteen Percocet tablets. A prescription for Percocet dated August 24, 2006 was made a trial exhibit. Dr. Groves testified that he followed the same procedure on August 24th as had been followed in prescribing the medication to the defendant on August 3rd and August 17th. Dr. Groves stated he did not allow anyone to change the quantity of the prescription. Upon reviewing the prescription, Dr. Groves identified his signature and confirmed that he wrote the instructions, print strength, and refill information which were identical to the instructions, print strength, and refill information written on the August 3rd and August 17th prescriptions. Dr. Groves stated the prescription quantity had been altered from fifteen to forty-five.

Dr. Groves stated that according to his medical records, the defendant was getting his prescriptions filled at the Medplex Pharmacy located inside The Med. Dr. Groves stated that he became suspicious that the defendant was altering the prescriptions. After he had written a prescription for the defendant on August 24th, Dr. Groves had a member of the wound care center staff contact the pharmacy to determine the quantity of Percocet tablets that had been dispensed to the defendant. Dr. Groves later spoke with someone at the pharmacy and determined that the defendant's prescriptions had been altered.

On cross-examination, Dr. Groves stated that the only way to obtain a prescription for Percocet at the wound care center was to get a prescription sheet from the locked machine which required a code. Dr. Groves stated that all Percocet prescriptions that he wrote for the defendant were in response to the defendant's complaints of pain. Dr. Groves stated that four or five nurses worked at the wound care center; and the same nurse would not have treated the defendant at each visit.

Kelly Woods testified that in August of 2006, she was working as a staff pharmacist at the Medplex Pharmacy. Dr. Woods stated the defendant often brought prescriptions to the Medplex Pharmacy. The defendant qualified for a charity program and received his prescribed medications free of charge. On August 3rd, the defendant presented Dr. Woods with a prescription written by Dr. Groves for the pain reliever, Percocet, five milligrams. Dr. Woods stated that she entered the prescription information into the pharmacy data base including the quantity, forty-five tablets. The prescription was then filled by pharmacy technicians. Dr. Woods stated that the defendant came into the pharmacy again on August 17th and handed her another prescription written by Dr. Groves for Percocet. The quantity on the prescription was forty-eight tablets. Dr. Woods entered the prescription into the computer and filled the prescription.

Dr. Woods testified that on August 24th, she was contacted by a nurse regarding the defendant's prescriptions. At the nurse's request, Dr. Woods investigated the defendant's pharmacy prescription history and determined that the prescriptions brought into the pharmacy by the defendant on August 3rd and August 17th did not match the information regarding the defendant's prescriptions in the wound care center's records. Dr. Woods was advised that the defendant had been seen earlier that day and given a prescription for fifteen Percocet tablets. Later on August 24th, the defendant came into the pharmacy and presented Dr. Woods with a prescription for forty-five Percocet tablets. Dr. Woods stated that she entered the prescription information into the computer system, gave the prescription to a pharmacy technician to be filled, and alerted hospital security and the police. When the defendant came to pick up his filled prescription order, he was taken into custody. Dr. Woods stated that she provided the police with pharmacy records indicating that on August 3rd, the defendant had a prescription filled for forty-five Oxycodone/Acetaminophen (Percocet) tablets, and on August 17th, the defendant had a prescription filled for forty-eight Oxycodone/Acetaminophen (Percocet) tablets.

On cross-examination, Dr. Woods stated that she was familiar with the defendant because he was a weekly pharmacy customer. She did not remember receiving a telephone call from the defendant regarding his prescriptions.

Velma Pilcher, a pharmacy technician, identified the defendant as a Medplex Pharmacy customer. Ms. Pilcher testified that on August 3, 2006, she witnessed the defendant sign for his prescription and she initialed his signature. Ms. Pilcher gave the defendant forty-five Oxycodone (Percocet) tablets. Nikia Rogers, a pharmacy technician, also identified the defendant as a Medplex Pharmacy customer. A print-out of the signature pad bearing the defendant's signature and Ms. Rogers' initials was identified by Ms. Rogers and made a trial exhibit. Ms. Rogers confirmed that on August 17, 2006, she gave the defendant forty-eight Percocet tablets.

Anthony Morris, officer with the Memphis Police Department, testified that on August 24, 2006, he responded to a call from The Med reporting fraudulent prescriptions. He stated he spoke with Dr. Groves and pharmacy technicians and obtained copies of the fraudulent prescriptions. The defendant was arrested when he came into the pharmacy and attempted to pick up medication. Officer Morris said that the defendant asked if he could receive a citation instead of going to jail.

The defendant testified that in 2003, he was diagnosed with venous stasis ulcers and diabetes and received treatment for both conditions at The Med. The defendant stated that he was first treated by Dr. Groves in July of 2006. In August of 2006, the defendant was seeing Dr. Groves on a weekly basis at the wound care center. On August 3rd, the defendant told Dr. Groves that he was in pain and asked for some pain medication. When the defendant left the wound care center, a nurse gave him discharge papers and a prescription. The defendant stated he did not look at the prescription because the same information was included on the discharge papers which he had reviewed. The defendant stated that he proceeded directly to the pharmacy located down the hall and gave the prescription to Dr. Woods who entered the information into the pharmacy computer. The defendant waited about thirty minutes for his prescription to be filled.

On August 17, 2006, the defendant again saw Dr. Groves and complained of pain. After Dr. Groves left the examination room, a nurse returned with the defendant's discharge papers and said that the doctor was going to order some Percocet. About five minutes later, the nurse brought him a prescription. The defendant stated that he did not look at the actual prescription, but knew that he had been prescribed eight Percocet tablets from looking at the discharge papers. The defendant stated that he usually had a different nurse every time he was treated at the wound care center. From the wound care center, the defendant went directly to the pharmacy and gave the prescription to Dr. Woods. Several hours later, he returned to the pharmacy to retrieve his medication. After he returned home, the defendant discovered that he had received forty-eight Percocet tablets instead of eight. The defendant claimed that he called the Medplex Pharmacy to ask that the computer be checked. He stated that he took no action as a result of the telephone call. The defendant returned to the wound care center on August 24th, however, he could not remember if he saw Dr. Groves. After treating his legs, a nurse gave him discharge papers and left. About five minutes later, the nurse returned with a prescription. The defendant stated that the nurse who gave him his prescription on August 24th was not the same nurse who gave him his prescription on August 3rd or on August 17th. He stated that he went directly to the pharmacy and gave Dr. Woods the prescription. The defendant agreed that the three prescriptions had been altered, but he denied any knowledge of the changes. The defendant stated that on the dates in question, only he had access to his prescriptions from the time that he received them from a nurse until he gave the prescriptions to Dr. Woods. The

defendant admitted that he was convicted of theft approximately ten years ago and stated, "They did sentence me[.]"

On cross-examination, the defendant agreed that on August 3rd, his discharge papers indicated he was to receive fifteen Percocet tablets, the discharge papers he received on August 17th indicated that he was to receive eight Percocet tablets, and the discharge papers he received on August 24th indicated that he was to receive fifteen Percocet tablets. The defendant agreed that he picked up his prescriptions on August 3rd and August 17th and that he tried to pick up his prescription on August 24th. According to the defendant, on either August 3rd or August 17th, he called the pharmacy to report that he had received more Percocet than had been prescribed. The defendant stated that he saw Dr. Groves on the 17th, however, he did not tell the doctor that he had received more medication than was prescribed. The defendant agreed that he asked Dr. Groves for more pain medication. The defendant could not recall if he saw Dr. Groves on August 24th. He stated that he asked a nurse for more pain medication and the nurse paged Dr. Groves to request a prescription for the defendant. According to the defendant, the nurses also had access to prescription sheets. The defendant denied that upon his arrest, he asked a police officer if they could give him a citation instead of taking him to jail. He agreed that in 1998, he was convicted of theft of property over five hundred dollars. He stated that he was put on probation and ordered to "pay the money back[.]"

Analysis

I. Consolidation of the Offenses for Trial

The defendant asserts that the trial court erred in consolidating the three offenses for trial. Specifically, the defendant argues that because defense counsel objected to the state's motion to consolidate, the trial court should have applied the rule governing the severance of cases. The defendant asserts that the trial court's consolidation of the cases unfairly prejudiced him by allowing the jury to consider evidence of his propensity to commit the offenses charged.

In pretrial proceedings, the state moved to consolidate the three cases pursuant to Rules 8 and 13 of the Tennessee Rules of Criminal Procedure. Rule 8(b) provides that two or more offenses may be "consolidated pursuant to Rule 13 if the offenses constitute parts of a common scheme or plan or if they are of the same or similar character." Rule 13 allows the trial court to consolidate the offenses if the offenses could have been joined in a single indictment pursuant to Rule 8 or sever the offenses if the prosecution or defense could have obtained a severance under Rule 14. *See* Tenn. R. Crim. P. 13(a) and (b). The defendant opposed the state's motion. "[W]hen a defendant objects to a pre-trial consolidation motion by the state, the trial court must consider the motion by the severance provisions of Rule 14(b)(1), not the 'same or similar character' standard of Rule 8(b)." *Spicer v. State*, 12 S.W.3d 438, 443 (Tenn. 2000). Pursuant to Rule 14(b)(1), "the defendant shall have a right to a severance of the offenses unless the offenses are part of a common scheme or plan and the evidence of one would be admissible upon the trial of the others." *Id.* at 445.

The first prong of Rule 14(b)(1) requires a showing that: (1) the offenses are of distinctive design or are signature crimes; (2) the evidence demonstrates a larger continuing plan or conspiracy; or (3) the offenses are part of the same criminal transaction. *State v. Moore*, 6 S.W.3d 235, 240

(Tenn. 1999). Also, a common scheme or plan may be supported by evidence of "groups or sequences of crimes committed in order to achieve a common ultimate goal or purpose." *State v. Hallock*, 875 S.W.2d 285, 290 (Tenn. Crim. App. 1993). The larger, continuing plan classification has been reserved for cases involving evidence of crime sprees demonstrating the commission of several crimes closely related in time. *See State v. Allen Prentice Blye*, No. E2001-01375-CCA-R3-CD, 2002 WL 31487524, at *6 (Tenn. Crim. App., at Knoxville, Nov.1, 2002), *perm. app. denied* (Tenn. Mar. 10, 2003).

The second prong of Rule 14(b)(1) requires a showing that the evidence of one offense would be admissible in the trial of the other offenses. Therefore, the question of evidentiary admissibility must be addressed. *Spicer*, 12 S.W.3d at 445. The trial court must conclude that: (1) evidence of each offense is relevant to some material issue in the trial of the other offenses; and (2) the probative value of the evidence of other offenses is not outweighed by the prejudicial consequences of admission. *Id.* "Evidence of a person's character or trait of character is not admissible for the purpose of proving action in conformity with the character or trait on a particular occasion." Tenn. R. Evid. 404(b). But, evidence of "other crimes, wrongs, or acts" may be admissible for "other purposes" such as proving identity, criminal intent, or rebuttal of accident or mistake. *Id.*; Tenn. R. Evid. 404, Advisory Comm'n Cmts. To determine whether evidence of other crimes, wrongs or acts is admissible for a purpose other than to prove that the person acted in conformity with a character trait, the trial court must determine whether "a material issue exists other than conduct conforming with a character trait," and the court "must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice." Tenn. R. Evid. 404(b)(2) and (4).

Generally, if the trial court complied with the Rules of Criminal Procedure, its decision to consolidate offenses will not be overturned absent an abuse of discretion. *State v. Toliver*, 117 S.W.3d 216, 231 (Tenn. 2003); *Spicer*, 12 S.W.3d at 442. In the instant case, the trial court found the offenses were part of a common scheme or plan. However, the court failed to consider the admissibility of evidence of each offense in the trial of the other offenses and therefore applied the incorrect legal standard. *See State v. Jovan Xavier Moore,* No. M2007-02515-CCA-R3-CD, 2008 WL 4253636, at *7 (Tenn. Crim. App., at Jackson, Sept. 16, 2008), *perm. app. denied* (Tenn. May 4, 2009) (concluding that following the defendant's objection to the state's motion for consolidation, the trial court applied the incorrect legal standard finding that the offenses were of the same or similar character, but failing to address the question of admissibility). Furthermore, at the pretrial hearing, the state described the nature of the case, named the witnesses expected to testify, and confirmed that the offenses took place within a three week time period; however, the state failed to present any evidence. We conclude that in the absence of evidence countervailing the defendant's right to severance under Rule 14(b)(1), the trial court erred in granting the state's motion to consolidate the cases over the objection of the defendant. *See id.* The trial court's error is subject to harmless error analysis. *See id.* (citing Tenn. R. Crim P. 52(a); *State v. Dotson,* 254 S.W.3d 378, 388 (Tenn. 2008); and *Spicer*, 12 S.W.3d at 447).

Our primary focus in addressing whether the trial court's error was harmless error is "whether the error likely had an injurious effect on the jury's decision-making process." *Dotson*, 254 S.W.3d at 389. We look to the evidence along with the trial court's findings of fact and conclusions of law to determine if the trial court's consolidation of the offense was justified despite use of an incorrect

standard. *See Jovan Xavier Moore*, 2008 WL 4253636, at *8. The evidence must be assessed under Rule 404(b) of the Tennessee Rules of Evidence. *Spicer*, 12 S.W.3d at 445. We must determine from the evidence presented that:

> (1) the multiple offenses constitute parts of a common scheme or plan; (2) evidence of each offense is relevant to some material issue in the trial of all the other offenses; and (3) the probative value of the evidence of other offenses is not outweighed by the prejudicial effect that admission of the evidence would have on the defendant.

*Id.* (citations omitted). Because no evidence was presented at the pretrial hearing, we look to the evidence presented at trial to determine whether the evidence supported a common scheme or plan and to determine whether such evidence was admissible under the Rule 404(b). *See Jovan Xavier Moore*, 2008 WL 4253636, at *9.

The evidence presented at trial established that the defendant was seen at the wound care center on August 3, 17, and 24, 2006. At each visit, Dr. Groves wrote prescriptions for Percocet in the quantities of fifteen, eight, and fifteen tablets respectively. The defendant confirmed that on each occasion, he read the discharge sheet and was aware of the quantity prescribed. The defendant further testified that after receiving his prescriptions on the 3rd and on the 17th, he knew that the pharmacy gave him more Percocet than his discharge sheets indicated would be prescribed. The defendant stated that when he returned for treatment on August 17th and on August 24th, he did not tell anyone at the wound care center that he received more medication than was indicated on the discharge sheets. The defendant stated that on August 17th, he asked Dr. Groves for more pain medication and that on August 24, he asked a nurse to request that Dr. Groves give him more pain medication. The evidence also established that in all cases, the prescriptions were altered by changing the quantity of Percocet tablets prescribed. Twice the prescriptions were altered by changing the number one into the number four. On one occasion, the prescription was changed by adding a four in front of the number eight. The incidents were linked as part of the same treatment the defendant received from Dr. Groves at the wound care center; and all incidents occurred within a period of three weeks.

We conclude that the evidence supports that all three offenses were part of a common scheme or plan. We further conclude that the evidence of each offense that was presented at trial would have been admissible under the Rule 404(b) upon the trial of each of the two remaining offenses. Evidence of each offense was probative of the defendant's intent in the commission of all three offenses. The defendant's intent would be a material issue in the separate trial of each offense. The probative value of evidence showing the defendant's intent is not outweighed by the danger of unfair prejudice. Accordingly, the trial court's failure to make findings regarding the admissibility of the evidence of each offense upon the trial of each of the remaining offenses was harmless error. The record supports consolidation of the offenses and the denial of severance under Rule 14(b)(1). The defendant is without relief on this issue.

## II. Impeach the Defendant's Testimony

The defendant asserts that the trial court improperly permitted the state to ask the defendant about his sentence in an attempt to impeach his testimony with a prior conviction. The defendant

further asserts that in the event of any waiver, this court may consider the issue under a plain error standard. The state argues that the defendant waived the issue by failing to make a contemporaneous objection and by failing to raise the issue in his motion for a new trial.

Ordinarily, the defendant's failure to make an objection to the admissibility of evidence at the time it is entered results in a waiver of the issue. *See* Tenn. R. App. P. 36(a); *State v.. Killebrew*, 760 S.W.2d 228, 235 (Tenn. Crim. App. 1988). However, in cases where the precise issue has been considered and a ruling made, it is not necessary for counsel to further object at trial to preserve the issue for appeal. *State v. McGhee*, 746 S.W.2d 460, 463-64 (Tenn. 1988). In the instant case, prior to the defendant's testimony and outside of the presence of the jury, the prosecutor sought instructions regarding the boundaries of impeaching the defendant's testimony with a prior theft conviction and inquired whether she could "ask him about being placed on probation." The trial court responded:

> The only thing you can ask him is if he is the same person that was convicted of whatever the offense was and whatever time frame and that he in that case received probation. That's - - you don't ask him about the results. Now, he may open the door. If he opens the door, you can get into it. Let's just see what happens. That is all you can ask him.

We conclude that defense counsel's failure to object at trial did not waive the issue for appellate review. *See* Tenn. R. Evid. 103(a)(2) ("Once the court makes a definitive ruling on the record admitting to or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal."). Nevertheless, waiver becomes a consideration because of the affirmative actions taken by the defense at trial. Specifically, during the direct examination of the defendant, defense counsel asked if the defendant had been convicted of theft and if he was sentenced and received punishment. The defendant affirmed that he had been convicted and was sentenced and received punishment. On cross-examination, the prosecutor revisited the issue of the prior conviction and asked if the defendant had been sentenced to two years. The defendant responded that he had received probation and was instructed to pay restitution. The trial court interrupted the defendant's testimony, thereby preventing further testimony on the prior conviction.

When defense counsel attempts to "gain credibility" with the jury by first presenting evidence which has been ruled admissible by the trial court, the strategy, though sound, "can be fraught with danger in terms of preserving issues for appeal." *State v. Charles Drake*, No. E2004-00247-CCA-R3-CD, 2005 WL 1330844, at *15 (Tenn. Crim. App., at Knoxville, June 6, 2005) (defense counsel first brought up the defendant's intoxication in direct testimony after the trial court ruled that the defendant's blood toxicology report was admissible). As observed by the court in *Charles Drake*, "[h]owever, when, as here, defense counsel elects to elicit the [prior] conviction during direct-examination, he waives all issues relating to the admissibility of the conviction. This is the price that an accused must pay when defense counsel invokes this strategy." *Id.* at *16 (quoting *State v. Milburn Greene*, No. C.C.A. 317, 1990 WL 170431, at *3 (Tenn. Crim. App., at Knoxville, Nov. 7, 1990), *perm. app. denied* (Tenn. Mar. 18, 1991)). In the instant case, since defense counsel first addressed the defendant's conviction for theft and his sentence in direct

examination, issues relating to the admissibility of evidence of the defendant's prior conviction were waived.

In addition, the defendant failed to present the issue in his motion for a new trial. "[I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, . . . or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived." Tenn. R. App. P. 3(e); *State v. Martin*, 940 S.W.2d 567, 569 (Tenn.1997) (holding that a defendant relinquishes the right to argue on appeal any issues that should have been presented in a motion for new trial but were not raised in the motion). The defendant argues that although not addressed in a motion for new trial, the improper impeachment of the defendant's testimony should be reviewed by this court under the standard of plain error.

Plain error review extends only to an obvious error which affects the substantial rights of the defendant. The criteria for finding plain error are difficult to satisfy. We will not recognize plain error unless the following five factors are established: (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the defendant must have been adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is necessary to do substantial justice. Tenn. R. Crim. P. 52(b); *State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000). All five factors must be established, and consideration of all five factors is unnecessary if any one factor indicates that relief is not warranted. *Id.* at 283. The defendant has the burden of persuasion regarding plain error claims. *See United States v. Olano*, 507 U.S. 725, 734 (1993).

The record demonstrates what occurred in the trial court and does not support that a clear and unequivocal rule of law was breached or that a substantial right of the defendant was adversely affected. The record reveals that before the prosecutor attempted to impeach the testimony of the defendant, defense counsel asked the defendant about his prior conviction and whether he had received a sentence and punishment. The defendant responded, "They did sentence me[.]" The defendant thereby opened the door on questions regarding his sentence for the prior conviction. On cross-examination, the prosecutor revisited the issue, asking "you were sentenced to two years, correct?" The defendant responded, "Probation and they gave me three years probation." The defendant offered unsolicited testimony that he was also ordered to pay restitution. The trial court prevented further testimony by the defendant on the issue. Finally, although addressing the defendant's prior conviction during his direct examination may have been a tactical maneuver waiving the issue, the failure to address the issue in a motion for a new trial was not. Therefore, the five requisite factors are not met. We conclude that the defendant has waived the issue and has not carried the burden of showing he is entitled to plain error review. The defendant is without relief on this issue.

### III. Sufficiency of the Evidence

On appeal, the defendant asserts that the record does not reasonably support his convictions. We begin our review by reiterating the well-established rule that once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). Therefore, on appeal, the convicted defendant has the

burden of demonstrating to this court why the evidence will not support the jury's verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). To meet this burden, the defendant must establish that no "rational trier of fact" could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003); *see* Tenn. R. App. P. 13(e). In contrast, the jury's verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). The state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. *Carruthers*, 35 S.W.3d at 558. Questions concerning the credibility of the witnesses, conflicts in trial testimony, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). We do not attempt to re-weigh or re-evaluate the evidence. *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006). Likewise, we do not replace the jury's inferences drawn from the circumstantial evidence with our own inferences. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

The defendant was found guilty of two counts of obtaining possession of a controlled substance by forgery and one count of attempt to obtain possession of a controlled substance by forgery. Under Tennessee Code Annotated section 53-11-402(a)(3), "[i]t is unlawful for any person knowingly or intentionally to: . . . (3)[a]cquire or obtain, or attempt to acquire or attempt to obtain, possession of a controlled substance by misrepresentation, fraud, forgery, deception or subterfuge." A defendant "knowingly" commits an offense when he "acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." Tenn. Code Ann. § 39-11-302(b). A defendant "intentionally" commits an offense when he "acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result." *Id.* at § 39-11-302(a). Criminal attempt is defined as, a person "acting with the kind of culpability otherwise required for the offense," and either, "(2) [a]cts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or (3) [a]cts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense . . . ." *Id.* at § 39-12-101(a)(2) and (3). Pursuant to Tennessee Code Annotated section 39-17-408, Oxycodone is a Schedule II controlled substance.

When viewed in a light most favorable to the state, the evidence showed that on August 3, 2006, Dr. Groves prescribed the defendant fifteen Percocet tablets for the relief of pain. Dr. Groves explained that Percocet was another name for the narcotic pain medication, Oxycodone, a Schedule II controlled substance. The defendant testified that the discharge sheet indicated that Dr. Groves wrote a prescription for fifteen Percocet tablets. The defendant testified that after receiving the prescription, he went directly from the wound care center to the pharmacy located down the hall. After receiving the prescription from the nurse, only the defendant had access to the prescription. Dr. Woods entered the order for forty-five Percocet tablets into the pharmacy computer system and

sent the prescription to be filled. A pharmacy technician testified that she knew the defendant as a customer of the pharmacy and that he picked up the prescription and signed for its receipt. The defendant testified that he later discovered that he had received forty-five Percocet tablets. The evidence further established that the defendant returned to the wound care center on August 17th and was again treated by Dr. Groves. The defendant failed to mention to Dr. Groves that he had received more Percocet than had been prescribed. To the contrary, the defendant requested that Dr. Groves prescribe more medication. The evidence showed that Dr. Groves prescribed eight Percocet tablets and that the prescription was filled at the Medplex Pharmacy in much the same manner as the prescription of August 3rd had been filled. Dr. Woods testified that when the defendant gave the prescription to her, it indicated that the defendant was to receive forty-eight Percocet tablets. The defendant picked up and signed for the filled prescription later on August 17th. Dr. Woods testified that she did not recall receiving a telephone call from the defendant regarding his prescriptions.

On August 24th, the defendant returned for treatment and again requested more pain medication. Dr. Groves wrote a prescription for fifteen Percocet tablets which the defendant took to the Medplex Pharmacy to be filled. Dr. Woods testified that the prescription that the defendant submitted ordered forty-five Percocet tablets. Dr. Woods contacted security and police. The defendant was arrested when he returned to the pharmacy and attempted to obtain the Percocet tablets. We conclude that based upon the evidence presented at trial a reasonable jury could have found the defendant guilty of obtaining a controlled substance by fraud and attempt to obtain a controlled substance by fraud. Therefore, the defendant is without relief on this issue.

## IV. Cumulative Effect

The defendant contends that the cumulative effect of the errors in this case deprived him of his right to a fair trial and due process. However, we find no merit to this claim in light of our previous determinations.

## Conclusion

Based upon the foregoing review, we affirm the judgments of the trial court.

_____
J.C. McLIN, JUDGE

-11-